## Whitaker *versus* Delaware and Hudson Canal Company.

1. Private charters are to be strictly construed, but when the Commonwealth grants a public franchise over a highway, a clause relative to the use of such highway will not be so construed as to defeat the grant.

2. Where a corporation is authorized by its charter to construct a dam in a river, provided the same be " so constructed as to leave the channel of the river as safe and convenient for the descent of rafts as it now is," such proviso is to be construed to mean that the dam shall be so constructed as to be the least obstruction to the navigation of the river consistent with the uses of the dam for the purposes contemplated by the charter.

3. Plaintiff averred that defendants had constructed and maintained their dam in violation of their statutory rights and in such a manner as to cause him injury. *Held*, that the burden is on the plaintiff to prove these averments, and the mere fact that the rafts were injured by the dam is not sufficient.

April 2d 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas of *Wayne county :* Of January Term 1878, No. 181.

Case by Stephen F. Whitaker, against the Delaware and Hudson Canal Company, to recover damages for injury to plaintiff's rafts while passing through the schute of defendant's dam, alleged to have resulted from the improper construction and maintenance of such dam.

The *narr.*, inter alia, charged:

" That the defendants did not nor would use such due and reasonable care, diligence and skill, or adopt such due and proper precautions in and about the premises, in putting and leaving the said highway in such reasonably secure and proper condition, and as safe and convenient for the descent of rafts as it was before the construction of said dam ; and the defendant then and there, to wit, at the time and place aforesaid, wrongfully, negligently and injuriously, made default in the premises, and built and left the said dam in and across said highway, in a dangerous, insecure and impassable state and condition," &c.

The defendant, incorporated by the legislature of New York, and possessing certain franchises granted by the legislature of Pennsylvania, was authorized by the two states to construct a canal or slackwater navigation from the head-waters of the Lackawaxen creek to its mouth in Pennsylvania, and thence in the state of New York down the Delaware river to Carpenter's Point, and to the Hudson river. In doing so it was authorized to construct dams on the Delaware river and to make feeders therefrom. This right was essential to carry out the purposes for which the defendant was incorporated, viz: the construction of a great interstate water communication between the coal fields of Pennsylvania and the city

of New York.   In pursuance of its chartered privileges, it in 1827 erected a dam across the Delaware river at the mouth of the Lacka-waxen creek, for the purpose of supplying that portion of the canal upon the New York side of the river with water.

By the 3d section of the Act of the General Assembly of Penn-sylvania of April 1st 1825, Pamph. L. 141, it is provided, " That the said company shall not erect any works or make any improve-ments connected with the Delaware river unless the same shall be so constructed as to leave the channel of the said river as safe and as convenient for the descent of rafts as it now is."

The plaintiff was a lumberman, and as such, was engaged in run-ning lumber down the Delaware river.   In the summer of 1875, in passing the dam two double rafts owned by him were wrecked, causing the loss for which suit was brought.

At the trial the plaintiff offered some evidence in regard to the maintenance of the dam, but relied chiefly upon its improper con-struction as the cause of the injury done to his rafts.   There was also evidence on the part of defendant as to the broken and dam-aged condition of the rafts, the material portion of which is recited in the opinion of this court.

The court, Waller, P. J., directed a verdict for the defendant in an opinion, inter alia, saying :

"It devolves upon the plaintiff to make out his case; and to sustain his action he must furnish evidence of his loss, and must prove the loss was caused by passing over this dam of the defend-ant, and further, that his loss was occasioned by the negligence or want of proper care and diligence on the part of the defendant in keeping the dam and schute, which constitute 'the channel of the river' at that point, in proper repair and condition for the reasona-bly safe and convenient descent of rafts.   In the absence of such evidence we instruct you that the plaintiff cannot recover in this action.

"It is an unquestionable fact that the dam of the defendant forms an obstruction to the navigation of the river by rafts.   But if the defendant has constructed the dam in such a manner as to afford the least possible obstruction to the running of rafts, and has maintained and kept in good repair a schute in said dam which renders the passage of rafts over the same reasonably safe, and has provided the best means of passing over the dam that could be done with the user of the dam, under the grant from the Commonwealth, and has kept such schute in good order and repair, then the plain-tiff cannot recover.   The plaintiff has not shown by competent evi-dence such negligence on the part of defendant, nor has he offered sufficient evidence that would warrant us in submitting the question to you, as a question of fact, whether such negligence existed; while the defendant has, by a large number of witnesses, shown that this schute was, at the time complained of by the plaintiff. in as safe a

condition as usual, and as safe as many natural points in the river, other than this dam. We think, under the rules of law governing this case, that the plaintiff has failed to make such a case as should be referred to the jury. We therefore direct a verdict for the defendant."

The plaintiff took this writ and assigned for error the refusal to submit the case to the jury and the direction to find for defendant.

*G. G. Waller*, for plaintiff in error.—The company had no right to construct the dam so as to materially interfere with the safe navigation of the river, and it was a question for the jury, under the evidence, whether there was a material and unnecessary interference.

*H. M. Seely*, for defendant in error.—The joint action of the states of New York and Pennsylvania created not simply a contract " with the corporation, but a compact between the states," to create a great interstate line of communication, by which both states were to be vastly benefited. The charter is not to be compared with a charter from an individual state. It is to be liberally construed with reference to the magnitude of the enterprise, by giving the company the necessary means to accomplish the purposes of its creation : Brocket *v.* Ohio and Penna. Railroad Co., 2 Harris 244; Cleveland & Pittsburgh Railroad Co. *v.* Speer, 6 P. F. Smith 332.

The following cases afford a clear guide to the construction of similar language in charters from a state : Monongahela Bridge Co. *v.* Kirk, 10 Wright 112; Commonwealth *v.* E. & N. E. Railroad Co., 3 Casey 365; Ensworth *v.* Commonwealth, 2 P. F. Smith 322; Bellinger *v.* N. Y. Central Railroad Co., 23 N. Y. 42. Shall a more strict construction be given in this compact between two states ?

We took the position in the court below and here maintain, that no recovery can be had against defendant in this kind of proceeding, on the ground of improper construction of the dam, but only upon proof of negligence in its maintenance. The burden of establishing this negligence was on the plaintiff: Allen *v.* Willard, 7 P. F. Smith 379. There was neither proof nor any attempt to prove want of skill in constructing or negligence in maintaining this dam.

Mr. Justice TRUNKEY delivered the opinion of the court, May 6th 1878.

The defendants were incorporated under the laws of New York, and by divers statutes of this state, are vested with certain public franchises. For the purposes of the grant the dam across the Delaware river was built about fifty years ago, and the right to maintain it is conceded. In the Act of 1825, Pamph. L. 142, is a provision

[Whitaker *v.* Delaware and Hudson Canal Co.]

"That the said company shall not erect any works, or make any improvement, connected with the Delaware river, unless the same shall be so constructed as to leave the channel of said river as safe and as convenient for the descent of rafts as it now is." The plaintiff complains that the river is not as safe and convenient for navigation as before the erection of the dam. Unquestionably this is so. A dam in a stream is an impediment and in some degree renders its navigation less safe and convenient. A literal construction of this provision makes it impossible to build and maintain the dam, and the conceded right vanishes. The statutes of this state, recognising those of New York, and in connection therewith, conferring the power to construct a great public highway, are nugatory under a strict construction of the section providing for safe and convenient navigation of the river. This was not the legislative intent. It could not have been intended to grant a franchise to build a public highway, in connection with one in a sister state, and so clog it that the work could never be executed.

Various statutes, from time to time, have been enacted authorizing public improvements, some of which would obstruct or impede the navigation of rivers, and others the use of streets and roads, which contained provisions forbidding such obstructions and impediments. The courts have uniformly held that these provisions should be liberally construed, so as not to destroy the grant. For instance, the act of incorporation of the Monongahela Bridge Company contained a declaration that nothing therein contained should authorize the erection of a bridge over the Monongahela river "in such manner as to injure, stop, or interrupt the navigation of the said river, by boats, rafts or other vessels." It was held that the proviso was not intended to prevent the erection of piers in the bed of the river, yet piers in the bed of a navigable stream inevitably endanger navigation and render it more difficult. They do not necessarily "injure, stop or interrupt the navigation" in the sense in which these words were used by the legislature. A strict literal meaning was not intended, and in the very nature of things, it never could have been. When the purpose of the franchise is the performance of a public act, the grant is to be so interpreted as to enable the act to be done. The extension of one highway over another is a public act, and not less so because of the power to exact tolls: Monongahela Bridge Co. *v.* Kirk, 10 Wright 112. The charter of the Erie and North East Railroad Company had a provision that "The said railroad shall be so constructed as not to impede or obstruct the free use of any public road, street, lane or bridge now laid out, opened or built." "These words taken literally and in their strongest sense would prevent the railroad from being made on the streets at all. But we follow authority in saying they are not to be so interpreted. The defendants have a right to use a street if they take care to obstruct it as little as the nature and char-

acter of their improvement will permit, if they create no material or unnecessary impediment—no obstruction which could be avoided by any reasonable expenditure of money or labor.  They cannot occupy the whole of a street and drive the public away from it altogether. But any street which is wide enough for the railroad and public both may be used on the terms mentioned."  Per BLACK, C. J., Commonwealth *v.* E. & N. E. Railroad Co., 3 Casey 365. ·

It is no departure from the current of decisions, but in its direct line, to hold that the defendants can enjoy their franchise, can lawfully construct and maintain their dam, taking care to obstruct the channel as little as the nature and character of the improvement will permit, and leaving it as safe and convenient for the navigation of rafts as could be by any reasonable expenditure of money and labor.  Their franchise is for the construction of one highway over another.  The whole community are interested in both.  Private charters are strictly interpreted.  In them what is not expressed or necessarily implied, is not granted, and what is doubtful is resolved in favor of the sovereign.  But when the sovereign grants a public franchise over a highway, a clause relative to the use of said highway will not be so construed as to defeat the grant.

The plaintiff does not claim merely for consequential damages, resulting solely from the construction of the dam.  If he did, the defendants' answer would be found in Clark *v.* Birmingham and Pitts. Bridge Co., 5 Wright 147, and Monongahela Bridge Co. *v.* Kirk, *supra.*

He claims further for an immediate injury, consequent upon the defendants' negligence, in that they "built and left the said dam in and across said highway, in a dangerous, insecure and impassable state and condition."  His averment implies much more than such obstruction as was necessary for the purposes of the franchise, and, if established, and there was no contributory negligence, his right to recover is clear.  If he adduced sufficient proof of such negligence, it should have been submitted to the jury.

The evidence of the broken and damaged condition of the rafts, before reaching the dam, will not be specially noted, though that would have been important as tending to show contributory negligence, had the case been submitted.

Surrine and Lakin were steersmen on the rafts.  Both had had long experience on that river, and neither ever had bad luck or stove a raft on that dam before.  They agree that the water in the schute was rougher than usual, and that the water in the roll was rougher than in the schute.  The injury was done in the roll.  A raft ahead of them was stove to pieces at same place.  Surrine says, "I think that dam is about as bad as any place we have on that river." Lakin says, " It was a fair freshet.  The slash-boards were on the dam.  They caused a tendency to draw the rafts to Jersey."  "I

[Whitaker *v.* Delaware aud Hudson Canal Co.]

should not call the dam very safe." "Are not the slash-boards always there, except when the water is high, on the Jersey side of the crib?" "I cannot say they wasn't." "And are they not kept there to throw water in the channel and help you over the dam? wouldn't that be the effect to throw water through the rafting channel?" "Yes, sir." Curtis, who was on the raft with Surrine, says, "I laid it to the slash-boards, which made the surges of the water, and that seemed heavy. I think the damage was done by the dam; I don't know what else could have done it. If there had not been any dam there it could not have done any injury. There is always a roll right there in a freshet." With this evidence to make out the charge of negligence, the plaintiff rested. There is no pretence that the defendants' witnesses added to its strength. The plaintiff's witnesses had been in his employ on the rafts and had ability to discover anything unusual, done or omitted by defendants, to cause the extraordinary roughness of the water. Yet careful counsel failed to point to an expression tending to show an unusual condition of the dam in reference to the stage of the water. One witness laid the unusual roll to the slash-boards, but neither he nor any other said it was uncommon for the slash-boards to be there. He was, however, correct in saying, "if the dam had not been there it could not have done any injury." But it was by no means sufficient to establish negligence to connect the injury with the dam.

The dam had been rightfully there for many years. The Commonwealth has made no complaint of abuse of the grant. In 1830 she exonerated the defendants from building the river lock in the dam until they shall be required by the legislature: Pamph. L. 407. There is no evidence of change in the dam since that date. Neither court nor jury can say a lock should have been constructed after the Commonwealth has said otherwise. Negligence will not be presumed. When the plaintiff avers that defendants have constructed and maintained their dam in violation of their statutory rights, and in such manner as not to be the least obstructive to the navigation of the river, consistent with the use of the dam for the purposes of their franchise, and by some negligent act have caused him immediate injury, the burden is on him to prove his averments. The mere fact that the rafts were injured by the dam is not enough. It falls as far short of sufficient proof as does the fact alone of the killing a horse by a railway train when crossing a street, fall short of showing negligence in the railway company. A spark, a scintilla of evidence of negligence by the defendants is here, and no more. The learned judge was right in his conclusion that the evidence was insufficient to warrant a finding that the defendants were guilty of negligence.

Judgment affirmed.